**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

STOUT LAW GROUP, P.A.
400 E. Pratt Street
8th Floor
Baltimore, Maryland 21202

    Plaintiff

v.

INTEGRATED CANNABIS SOLUTIONS, INC.    Case No.: 1:18-cv-03488
6810 N. State Road Seven
Coconut Creek, Florida 33073

Serve on Resident Agent:
CORPORATE ADMINISTRATIVE SERVICES, INC.
1955 Baring Blvd
Sparks, Nevada 89434

    Defendant

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, STOUT LAW GROUP, P.A., ("PLAINTIFF"), by and though its counsel, Matheau J. W. Stout, Esq. files this First Amended Complaint against INTEGRATED CANNABIS SOLUTIONS, INC. ("IGPK"), and alleges:

**Parties**

1. Plaintiff is a law firm, organized as a Maryland professional association.

2. Plaintiff is beneficially owned by the undersigned, Matheau J. W. Stout, Esq. ("STOUT").

3. Stout is owed past due legal fees by the Defendant for corporate and securities legal work performed from October 1, 2014 to November 15, 2015.

4. Stout assigned the right to collect the past due legal fees owed by the Defendant to Plaintiff.

5. Defendant is a publicly traded corporation known by its trading symbol, IGPK, domiciled in Nevada and headquartered in Florida, which has formerly conducted business in Maryland, and which has the ability to issue securities under Section 3(a)(10).

## Jurisdiction and Venue

6. This action is instituted pursuant to

    a. 15 U.S.C § 77c(a)10 (Section 3(a)(10) of the Securities Act of 1933), hereinafter ("Section 3(a)(10)") for the issuance of Defendant's common stock in exchange for the convertible promissory note and/or claims Plaintiff holds against IGPK; and also pursuant to

    b. 28 U.S.C. § 2201 for a declaratory judgment which declares Plaintiff's convertible promissory note is a security under 15 U.S. Code § 77b (Section 2(a)(1) of the Securities Act of 1933) and that Defendant's public disclosures and financial statements contains material misstatements and omissions that misrepresent the financial condition of IGPK by their failure to disclose the existence of the promissory note, its convertible nature and conversion metrics.

7. This Court has jurisdiction over the parties hereto based on the Federal Statutes. The conversion metrics present in the convertible promissory note as detailed below also demonstrate that the amount in controversy exceeds $75,000 with regard to the additional counts against Defendant herein.

8. Venue is proper in the Northern District as Plaintiff is a Maryland Professional Association, and all of the legal services provided by Stout which give rise to Plaintiff's Claim Amount (assigned by Stout to Plaintiff) were performed in Baltimore, Maryland.

**Statement of Factual and Procedural Background**

9. Plaintiff holds a bona fide claim against Defendant in the principal amount of $38,887.38 (the "Claim Amount"), which is documented by a Convertible Promissory Note issued in that principal amount on November 16, 2015 (the "Note") and signed by IGPK's former Chief Executive Officer, J. Zev Jankovic, CPA.

10. A copy of the Note, including the spreadsheet appended thereto detailing the monthly attorney's fees of $2,777.67 accruing from October 1, 2014 through November 1, 2015 which together comprise the Claim Amount, is attached hereto and incorporated herein as Exhibit A.

11. In further support of the origin and history of the Plaintiff's Claim, attached hereto is a copy of IGPK's public securities filing for the period ending September 30, 2015, which detail's Stout's name as legal counsel under Item 9 "Third Party Service Providers" and which confirms the accrual of the quarterly legal fee, *"$8,333 was to Matheau Stout, Esq. for legal fees provided to the Company…"* The aforementioned September 30, 2015 disclosure and financial statements for IGPK are attached hereto and incorporated herein as Exhibit B.

12. In nearly three years since IGPK issued the Note, IGPK's state filings and OTCMarkets.com filings were delinquent, but IGPK recently updated its Nevada filings

and OTCMarkets.com profile with new contact information, which indicated to Plaintiff that new management was close to publishing updated public filings.

13. However, Plaintiff was never contacted by new IGPK management, and for this reason Plaintiff justifiably believed that IGPK's new financial statements might not reference the Note, or Plaintiff's claim for past due legal fees, thus giving rise to the Plaintiff's urgency in filing the present lawsuit against IGPK on November 12, 2018, (the "Original Complaint").

14. For the foregoing reasons, Plaintiff filed the Original Complaint which was served along with the Summons via certified mail, return receipt requested on November 15, 2018. The Original Complaint served on IGPK contained a copy of the Note, and the September 30, 2015 Quarterly Report.

15. To Plaintiff's dismay, even after IGPK had been served with the Original Complaint on November 15, 2018, its new CEO, Matthew Dwyer, published twelve (12) OTC Markets disclosures and financial statements on November 28, 2018, which all omitted to include the Note on IGPK's balance sheet, and which in fact did not disclose the existence of the Note at all. The November 28, 2018 IGPK disclosures and financial statements are attached hereto and incorporated herein as Exhibit C.

16. Even worse, in each of the twelve (12) new OTC Markets disclosures published on November 28, 2018, IGPK included language which questioned the validity of Plaintiff's Claim Amount and which questioned whether any legal services were performed by Stout for IGPK.

17. The Note is a security as that term is defined under 15 U.S. Code § 77b (Section 2(a)(1) of the Securities Act of 1933).

18. The Note contains a restricted legend typical of convertible promissory notes at the top of page 1, which references the Securities Act of 1933.

19. The presence of the restricted legend at the top of Page 1 of the Note indicated to IGPK's former CEO, J. Zev Jankovic, CPA, and to its new CEO, Matthew Dwyer, that the Note was intended by Stout and IGPK to be treated as a security.

20. The November 28, 2018 financial statements filed by IGPK do not include the Note as a note payable or as any form of liability on IGPK's balance sheet.

21. The November 28, 2018 financial statements and disclosures filed by IGPK do not disclose the Note, the convertible nature of the Note, or its conversion metrics, which allow Plaintiff to convert all or a portion of the Note into shares of IGPK common stock at a 50% discount to the market/bid price, which significantly increases the value of the Note.

22. Defendant knew that the Note existed prior to new CEO Matthew Dwyer's certification of the twelve (12) financial statements and disclosures published by IGPK on November 28, 2018 because the Original Complaint (which included a copy of the Note as an exhibit) was served on Defendant on November 15, 2018.

23. Defendant had a duty to ensure that the Note, it's convertible nature and conversion metrics, were properly recorded in IGPK's financial statements and disclosures published on November 28, 2018, but Defendant failed to do so.

24. Defendant had Stout's contact information on November 15, 2018 when the Original Complaint was served on Defendant (which is the same contact information shown in IGPK's public filings from 2015, available online for greater than three years) but Defendant did not contact Stout to request further information or verification of any

kind prior to publishing the materially false and misleading IGPK filings on November 28, 2018.

**Suitability of Section 3(a)(10)**

**Since Plaintiff Affirms Conversion Metrics Already Agreed to**

**By Parties in the Note Remain Fair to Plaintiff**

25. Due to the difficulties in depositing stock for cannabis related companies in the United States at the present time, and due to IGPK's three year delinquency in its public filings, Plaintiff knows of no stockbroker which will allow Plaintiff to deposit IGPK stock into a brokerage account without a federal court order recognizing an exemption from registration under the Securities Act of 1933, and thus it is impossible for Plaintiff to recoup its losses without relief under Section 3(a)(10).

26. IGPK's public securities filings were not updated in more than three years prior to Plaintiff's filing of the Original Complaint and its then last known public filing from 2015, which is Exhibit B hereto, detailed IGPK's inability to repay Plaintiff using cash.

27. Defendant's November 28, 2018 public filings include disclosures and financial statements which likewise detail zero assets and zero revenue, such that Defendant's inability to repay Plaintiff using cash remains true today.

28. Because Defendant appears unable from its public filings to repay Plaintiff using cash, Plaintiff seeks a Court Order pursuant to Section 3(a)(10) of the Securities Act of 1933 whereby IGPK would be required to reserve sufficient shares of its common stock in order to abide by the terms of the Order, and thereafter that IGPK would issue shares of

its publicly traded common stock to Plaintiff when requested in tranches, as payment for the settlement of Plaintiff's Note and/or Claim under Section 3(a)(10).

29. The Note contains conversion metrics which the Plaintiff and Defendant have previous agreed to under Section 2 of the Note, namely that

> The Holder of this Note is entitled, at its opinion, any time after the issuance of the Note, to convert all or any lesser portion of the Outstanding Principal Amount and accrued but unpaid Interest into Common Stock of the Issuer (the "Common Stock") at the lower of (a) $0.02 or (b) a 50% discount from the lowest bid price in the 30 days prior to the day that the Holder requests conversion, unless otherwise modified by mutual agreement between the Parties (the "Conversion Price")….:"

such that it is possible for this Honorable Court to approve the settlement of Plaintiff's Claim using this same language, which would require IGPK to irrevocably reserve a sufficient number of shares of IGPK's common stock at its Transfer Agent, such that the conversion metrics in the Note would be honored by IGPK's new management at such time as Plaintiff chooses to request the issuance of such shares of IGPK common stock.

30. For the foregoing reasons, Plaintiff has suffered a considerable loss which can only be remedied under Section 3(a)(10), which necessitates this present action.

31. Section 3(a)(10) requires that a hearing be conducted as to the fairness of the terms and conditions of the exchange of claims for securities, and those terms and conditions were already agreed to in the Note. Furthermore, attached hereto and incorporated herein as Exhibit D, is former CEO of IGPK J. Zev Jankovic's Affidavit affirming the validity of the Note and the terms thereof.

## Count I

### Court Order Pursuant to Section 3(a)(10)

32. Plaintiff re-alleges all of the foregoing paragraphs as if fully set forth herein.

33. Section 3(a)(10) provides, in its entirety, as follows:

Except with respect to a security exchanged in a case under title 11, any security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly in such exchange and partly for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court, or by any official or agency of the United States, or by any State or Territorial banking or insurance commission or other governmental authority expressly authorized by law to grant such approval;

34. Plaintiff holds a bona fide outstanding claim against Defendant in the amount of $38,887.38 for Defendant's failure to pay for legal services provided by Stout.

35. IGPK's CEO issued the Note to document the Claim Amount, and to allow Stout to convert all or a portion of the Note into IGPK common stock at a 50% discount to the market/bid price, on November 16, 2015, and such Note is a bona fide outstanding convertible security of Defendant in the principal amount of $38,887.38, but worth far more to Plaintiff due to the ability to convert at a 50% discount.

36. Plaintiff seeks a court order approving an exchange of Plaintiff's Note and/or Claim for shares of Defendant's common stock under the same conversion metrics already agreed to by IGPK and Stout in the Note.

37. Plaintiff requests this Honorable Court to hold a hearing upon the fairness of the terms and conditions of such exchange of Plaintiff's bona fide Note and/or Claim for shares of Defendant's common stock ("Fairness Hearing").

38. This Honorable Court has the ability to hold such a Fairness Hearing, and to determine the fairness of the terms and conditions of such an exchange of Plaintiff's Note and/or Claim for Defendant's common stock under Section 3(a)(10).

39. IGPK's former shell status makes it impossible for Plaintiff to deposit IGPK stock into a brokerage account without a federal court order recognizing an exemption from registration under Section 3(a)(10), and thus Plaintiff cannot recoup its losses without relief under Section 3(a)(10).

40. IGPK's failure to include the Note on its balance sheet in the twelve (12) public securities filings published on November 28, 2018 makes it impossible for Plaintiff to deposit IGPK stock into a brokerage account without a federal court order recognizing an exemption from registration under Section 3(a)(10), and thus Plaintiff cannot recoup its losses without relief under Section 3(a)(10).

41. IGPK's public securities filings detail its present inability to repay Plaintiff using cash, and Plaintiff seeks a settlement pursuant to Section 3(a)(10) whereby IGPK would be bound by a federal court which requires IGPK irrevocably to reserve a sufficient shares of its common stock in order to abide by the terms of the court order, and thereafter that IGPK would issue shares of its publicly traded common stock to Plaintiff when requested in tranches, as payment for the settlement of Plaintiff's Note and/or Claim under Section 3(a)(10).

42. For the foregoing reasons, Plaintiff has suffered a considerable loss which can only be remedied under Section 3(a)(10), which necessitates this present action.

43. Section 3(a)(10) requires that a hearing be conducted as to the fairness of the terms and conditions of the exchange of claims for securities, and Plaintiff affirms that the conversion metrics already agreed to in the Note are fair to Plaintiff.

**Count II**

**Declaratory Judgment (28 U.S.C. § 2201)**

44.     Plaintiff re-alleges all of the foregoing paragraphs as if fully set forth herein.

45.     There presently exists between Plaintiff and Defendant an actual and justiciable controversy with respect to existence of the Note, and whether the Note is a security required to be disclosed by IGPK in the public filings published by IGPK on November 28, 2018.

46.     Plaintiff therefore seeks a declaratory judgment from this Honorable Court pursuant to 28 U.S.C. § 2201 which declares that the Note issued to Stout on November 16, 2015 is a security as defined under 15 U.S. Code § 77b (Section 2(a)(1) of the Securities Act of 1933).

47.     Defendant has further essentially rendered the Note worthless by questioning, in twelve public securities filings published on November 28, 2018, whether there were any legal services provided by Stout as consideration for the Note, despite the documentation provided to Defendant in the Original Complaint served on Defendant on November 15, 2018.

48.     Because Defendant has failed to correct or amend its public securities filings to disclose the Note, despite Plaintiff's best efforts, and despite Mr. Jankovic's Affidavit, Plaintiff presently has no adequate remedy at law.

49.     Although Plaintiff has demanded that Defendant acknowledge its obligations to Plaintiff by reporting the Note, its convertible nature and conversion metrics properly in Defendant IGPK's public securities filings, Defendant has refused to do so.

50. IGPK's new CEO, Matthew Dwyer signed each of the twelve (12) OTC Markets filings published on November 28, 2018 as IGPK's Chief Executive Officer, and each contains the following "Certification" as that shown below for the Quarterly Report for the period ending September 30, 2018:

CERTIFICATION

I, Matthew Dwyer certify that:

1. I have reviewed this Disclosure Statement for the period ending September 30, 2018 of Integrated Cannabis Solutions, Inc.

2. Based on my knowledge, this disclosure statement does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this disclosure statement; and

3. Based on my knowledge, the financial statements, and other financial information included or incorporated by reference in this disclosure statement, fairly present in all material respects the financial condition, results of operations and cash flows of the Issuer as of, and for, the periods presented in this disclosure statement.

November 28, 2018
/S/Matthew Dwyer
CEO, Director

51. Contrary to the Certification of IGPK's new CEO Matthew Dwyer, IGPK's twelve securities filings published on November 28, 2018 all *contain untrue statements* in that the existence of the Note, it's convertible nature, and conversion metrics are not disclosed or shown on IGPK's balance sheets.

52. Contrary to the Certification of IGPK's new CEO Matthew Dwyer, IGPK's twelve securities filings published on November 28, 2018 all *misstate* or *omit material*

*facts* such as the convertible nature and conversion metrics of the Note and are thus misleading to existing shareholders and prospective investors.

53. Contrary to the Certification of IGPK's new CEO Matthew Dwyer, all of IGPK's financial statements and other financial information published on November 28, 2018 *misrepresent the financial condition* of IGPK in that the balance sheets all understate IGPK's liabilities by at least the Claim Amount, and all fail to disclose the convertible nature and conversion metrics of the Note, which are all material misrepresentations considering that IGPK reports having zero assets and zero revenue.

54. Plaintiff therefore seeks a declaratory judgment from this Honorable Court pursuant to 28 U.S.C. § 2201 which declares that the twelve (12) disclosures and financial statements published by Defendant on November 28, 2018 contain material misstatements and omissions and misrepresent the financial condition of IGPK by their failure to disclose the existence of the Note, its convertible nature and conversion metrics.

**Count III**

**Unjust Enrichment**

55. Plaintiff re-alleges all of the foregoing paragraphs as if fully set forth herein.

56. Plaintiff conferred a benefit upon the Defendant when Stout provided legal services as corporate and securities counsel for IGPK under an agreed upon flat fee per month.

57. Defendant knew it was receiving a benefit when its former CEO induced Stout to provide such legal services under an agreed upon flat fee per month during 2014 and 2015, and when IGPK failed to pay Stout and later when IGPK agreed to issue the

Note to formalize the amount past due, Defendant knew it continued to receive that benefit without compensation to Plaintiff.

58.     Defendant kept the benefit of the legal services provided by Stout in a manner that compensation is due to Plaintiff under the terms and conditions agreed to by Stout and Defendant.

59.     Simply because the public company Defendant has a new CEO and new legal counsel three years later, Defendant cannot justly be allowed to retain the benefit provided by Stout without paying Plaintiff the compensation agreed to by IGPK's prior CEO and acknowledged in IGPK's prior public filings.

**Count IV**

**Promissory Estoppel**

60.     Plaintiff re-alleges all of the foregoing paragraphs as if fully set forth herein.

61.     Stout provided legal services to Defendant based on Defendant's promise to pay Stout an agreed upon flat fee per month.

62.     Defendant's promise to pay Stout an agreed upon flat fee per month was both definite and substantial in nature, documented in IGPK's public filings, in the Note and in the Affidavit.

63.     Stout's performance of such legal services as named legal counsel for IGPK show a justifiable reliance on the promise made by Defendant.

64.     Stout's justifiably relied upon Defendant's promise to pay Stout an agreed upon flat fee per month by providing such legal services to Defendant.

65. Stout continued to provide legal services to IGPK despite Defendant's failure to pay Stout on time due to Defendant's representations that Stout would be paid as agreed, and such reliance by Stout was detrimental to Plaintiff.

## Count V

### Breach of Contract/Breach of Promissory Note

66. Plaintiff re-alleges all of the foregoing paragraphs as if fully set forth herein

67. Plaintiff and Defendant entered into a valid and binding contract on November 16, 2015, when Defendant issued Stout the Note.

68. Stout performed any and all conditions precedent and obligations for which Plaintiff is seeking payment under the Note, and such performance by Stout is affirmed by IGPK's former CEO, J. Zev Jankovic, in the Affidavit.

69. Defendant is indebted to Plaintiff for services rendered under the Note, in the amount of $38,887.38. Although Plaintiff has demanded payment, Defendant has failed and refused to pay.

70. Plaintiff has been damaged by Defendant's non-payment, by Defendant's failure to disclose the existence of the Note, its convertible nature and conversion metrics in its public filings, and by Defendant's refusal to honor the conversion metrics detailed in the Note.

## Count VI

### Quantum Meruit

71. Plaintiff re-alleges all of the foregoing paragraphs as if fully set forth herein.

72. Before entering into the Note, and at the request of Defendant, Plaintiff in good faith provided Defendant with legal services at Defendant's request.

73. Defendant accepted those services freely.

74. Plaintiff reasonably expected to receive compensation from Defendant for those services under the monthly flat fee amount which was shown accruing in Defendant's public filings.

75. The reasonable value of those services is $38,887.38.

76. Although Plaintiff has demanded payment, Defendant has failed and refused to pay such sum and the amount remains unpaid.

77. Plaintiff has been damaged by Defendant's non-payment.

**Count VII**

**Conversion or Trover**

78. Plaintiff re-alleges all of the foregoing paragraphs as if fully set forth herein.

79. Defendant's actions in failing to disclose the Note on its balance sheet as a Note Payable in twelve (12) public securities filings on November 28, 2018 have wrongfully prevented Stout from being able to sell the Note or convert the Note into shares of IGPK.

80. Defendant's actions in failing to disclose the convertible nature and conversion metrics of the Note in twelve (12) public securities filings on November 28, 2018 have wrongfully prevented Stout from being able to sell the Note or convert the Note into shares of IGPK.

81. The Note is a convertible security issued by Defendant to Stout, and as such, the Note is Plaintiff's property.

82. Defendant's actions constitute an improper exercise of dominion and control over Plaintiff's property as Plaintiff has been and continues to be unduly restricted in its ability to sell the Note and/or the Shares which could be converted from the Note.

83. As a result of Defendant's actions, Plaintiff has been deprived of its rights to alienate ownership of the Note and to convert all or a portion of the Note into shares of IGPK common stock.

84. Defendant's wrongful exercise of dominion and control over the Note owned by Plaintiff was and continues to be without lawful justification and constitutes a conversion or trover of the Note.

85. Plaintiff has been wrongfully deprived of its right to sell the Note or to convert the Note into shares of IGPK common stock due to Defendant's improper and wrongful obstruction of Plaintiff's efforts to ensure that the Note, it's convertible nature and conversion metrics were disclosed properly in IGPK's financial statements.

86. Plaintiff has been damaged as a result of Defendant's conversion/trover of the Note, in that Plaintiff has been unable to sell the Note, convert the Note into shares of IGPK, or otherwise realize any value from the Note.

**Count VIII**

**Injunction**

87. Plaintiff re-alleges all of the foregoing paragraphs as if fully set forth herein.

88. Defendant's actions in failing to disclose the Note on its balance sheet as a Note Payable in twelve (12) public securities filings on November 28, 2018 have wrongfully prevented Stout from being able to sell the Note or convert the Note into shares of IGPK.

89. Defendant's actions in failing to disclose the convertible nature and conversion metrics of the Note in twelve (12) public securities filings on November 28, 2018 have wrongfully prevented Stout from being able to sell the Note or convert the Note into shares of IGPK.

90. The Note is a convertible security issued by Defendant to Stout, and as such, the Note is Plaintiff's property.

91. Defendant's wrongful exercise of dominion and control over the Note owned by Plaintiff was and continues to be without lawful justification and constitutes a conversion or trover of the Note.

92. Plaintiff has been wrongfully deprived of its right to sell the Note or to convert the Note into shares of IGPK common stock due to Defendant's improper and wrongful obstruction of Plaintiff's efforts to ensure that the Note, it's convertible nature and conversion metrics were disclosed properly in IGPK's financial statements.

93. Defendant's continued wrongful exercise of dominion and control over the Note owned by Plaintiff constitutes a conversion or trover of the Note and will result in irreparable damage to Plaintiff.

94. Plaintiff has been damaged as a result of Defendant's conversion of the Note, in that Plaintiff has been unable to sell or otherwise realize any value from the Note.

95. There does not exist an adequate remedy at law to compensate Plaintiff in the event that Plaintiff is rendered unable to realize any value from the Note or the shares which Plaintiff could be able to convert from the Note.

96. Defendant's actions are without basis or merit.

97. Based upon the facts as plead herein, Plaintiff can succeed on the merits of its claim.

98. Based upon the facts as plead herein, Plaintiff is more likely than not to suffer irreparable harm in the absence of preliminary relief.

99. Based upon the foregoing, Plaintiff seeks a mandatory injunction requiring and compelling Defendant to correct or amend the twelve (12) disclosures and financial statements published on November 28, 2018 in order to properly disclose the existence of the Note, its convertible nature and conversion metrics.

100. Plaintiff's request for a mandatory injunction is reasonably suited to abate the threatened harm identified herein.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment awarding the following relief:

i. An award for all damages and losses suffered by Plaintiff as a result of Defendant's conduct, which exceed $75,000.00, including compensatory damages, consequential damages, punitive damages, interest, costs of suit, attorney's fees as a result of Defendant's conduct; and

ii. A declaratory judgment pursuant to 28 U.S.C. § 2201 which declares that the Note issued to Stout on November 16, 2015 is a security as defined under 15 U.S. Code § 77b (Section 2(a)(1) of the Securities Act of 1933); and

iii. A declaratory judgment pursuant to 28 U.S.C. § 2201 which declares that the twelve (12) disclosures and financial statements published by Defendant on November 28, 2018 contain material misstatements and omissions and misrepresent the financial condition of IGPK by their failure to disclose the existence of the Note, its convertible nature and conversion metrics; and

iv. A mandatory injunction requiring and compelling Defendant to correct or amend the twelve (12) disclosures and financial statements published on November 28, 2018 in order to properly disclose the existence of the Note, its convertible nature and conversion metrics; and

v. A mandatory injunction requiring and compelling Defendant to reserve in Plaintiff's name a sufficient number of shares of IGPK common stock in order to comply with the conversion metrics contained in the Note; and

vi. Schedule a Fairness Hearing under Section 3(a)(10) at which time Plaintiff will appear with undersigned counsel to confirm Plaintiff's continued agreement with the fairness of the terms of the Note, and specifically to the conversion metrics in the Note, such that an exchange of the Note and/or Plaintiff's Claim for shares of IGPK common stock issued pursuant to Section 3(a)(10) may be approved by this Honorable Court; and

vii. For such other and further relief as is deemed appropriate and equitable by this Honorable Court.

Respectfully submitted,

*/s/ Matheau J. W. Stout*
Matheau J. W. Stout (28054)
400 E. Pratt Street, 8th Floor
Baltimore, Maryland 21202
(410) 429-7076 Tel
(888) 907-1740 Fax

*Attorney for Plaintiff*